UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE MCKINNEY,
                    Plaintiff,

vs.                                         CIVIL NO. 2:08-CV-10624

COMMISSIONER OF SOCIAL SECURITY,            DISTRICT JUDGE ARTHUR J. TARNOW
                                            MAG. JUDGE. STEVEN D. PEPE

                    Defendant
_____/

**<u>Report and Recommendation</u>**

**I.      Background**

        Janice McKinney brought this action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying her application for  Disability Insurance Benefits (DIB)

under Title II of the Social Security Act.  Both parties have filed motions for Summary

Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the

following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be

**DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

        **A.      <u>Procedural History</u>**

        Plaintiff filed an application for DIB on October 15, 2003, alleging disability due to

degenerative changes of the lumbar spine and left foot and adjustment disorder with a history of

substance abuse, beginning December 25, 2000 (R. 48-50), although the date was amended by

Plaintiff to July 25, 2003 (R. 203).  Plaintiff's claims were initially denied on February 11, 2004,

1

and she requested a hearing (R. 30-35).  Administrative Law Judge (ALJ) Richard L. Sasena

conducted a hearing on January 26, 2006 (R. 199-225).  Plaintiff was represented by her current

attorney, and Vocational Expert (VE) Judy Findora also testified.   On January 12, 2006, ALJ

Sasena issued an opinion denying Plaintiff's applications (R. 17-24).  This became the

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review

on December 12, 2007 (R. 5-7).

>B.    **Background Facts**

>>1.    **Plaintiff Testimony**

>>>***Disability Application***

Plaintiff was born on July 25, 1953, and was 52 years old on the alleged disability onset

date (R. 48).  She completed the 12th grade of schooling (R. 68).  Plaintiff's past relevant work

experience was as a machine operator. (R. 84).  Plaintiff's daily activities include taking care of

her personal needs, water aerobics and grocery shopping (R. 98).

>>>***Testimony at January 2006 Hearing***

On April 6, 2006, Plaintiff appeared with counsel and testified before ALJ Sasena (R.

203-21). Plaintiff testified that she was on disability from her former job at Delphi (R. 204). She

had health insurance through General Motors and was receiving a pension (R. 204).  Plaintiff

also received a worker's compensation settlement (R. 205).  The Plaintiff testified that she was

unable to work due to pain in her ankles, knees, hands, low back and depression. She further

testified that she had more pain in her left lower extremity, ankle and knee than her right side.

She suffers from back pain, pain located in the middle of her back, which can be alleviated with

medication.  The frequency and intensity of her pain varies with her conditions.  She testified

that she has ankle pain most of the time, placing her pain range from a 2 to 8 on a pain scale of 1 being no pain to 10 being screaming and going to the emergency room (R. 207). She placed her ankle pain at level eight when she stands on it and has not taken her medication. She suffers from knee pain "every once in a while" and low back pain once a month. To help assuage her pain, she uses an ankle brace and wrist braces for her hand pain. Her current medications include ibuprofen and Tylenol #4.

She testified that she is depressed every day. She stopped taking antidepressant medications about two years before the hearing. Plaintiff testified that she could function normally but that she did see a psychotherapist for depression (R. 206).

The claimant testified that she lives alone and can take care of her personal needs. She hired a housekeeper and gardener to help with the upkeep of her home and yard. On occasion, she is able to drive (R. 209). As for food, she often eats take out meals. She used to enjoy playing the piano and sewing but can no longer participate in these activities. She likes to read and watch television with her boyfriend who visits with her daily.

With respect to her limitations, the Plaintiff testified that she can sit for one to two hours, stand for only a few minutes, and walk only very short distances. Oftentimes during the day, she naps in her chair. She also testified that she does water aerobics twice a week for four or five hours, down from five times a week, to help with her arthritis (R. 214-15).

When asked, she testified she could lift a gallon of milk, but only with both hands. She also testified that if she went back to work it would cause her hands to flare up. Plaintiff testified that she has not has not used street drugs for two or three years and occasionally drinks a glass of wine  (R. 215).

3

2.      **Medical Evidence**

**A. Physical Impairments**

In 1997 or 1998, Plaintiff sustained a fracture to her left ankle with secondary pain.  In 2000, while working for General Motors, she sustained an injury to her left knee.

On October 23, 2002, Plaintiff saw Susan M. Mosier-LaClair, M.D., an orthopedic surgeon for complaints of pain and swelling in her left ankle (R. 117-18).  Dr. Mosier's impression was bilateral hind foot arthrosis, greater on the left than the right, and a small ganglion cyst on the left foot tendon sheath, which was small and asymptomatic (R. 118).  Dr. Mosier noted that in her experience, patients obtained relief from orthotics and arthritic pain medication; accordingly, she gave Plaintiff a prescription for both (R. 118).

On July 3, 2003, Plaintiff returned to Dr. Mosier because she was unable to get insurance to cover the  recommended orthotics (R. 116). Plaintiff continued to experience pain and swelling with weight-bearing activities (R. 116).  Dr. Mosier gave Plaintiff another prescription for orthotics with a company she hoped would accept Plaintiff's insurance (R. 116).

On January 26, 2004, Plaintiff was examined by Neil A. Friedman, M.D., regarding her complaints of ankle, knee, and back pain and inability to lift items with her right hand such as dropping pots when she attempted to lift them.  (R. 156-57).  Plaintiff informed Dr. Friedman that she had been seen by two doctors in regards to carpal tunnel syndrome, Dr. Awerbuch and Dr. Beird.  They found evidence of bilateral carpal tunnel syndrome and Dr. Beird recommended that she undergo carpal tunnel release surgery, but Plaintiff had declined to do so (R. 156).[1] Plaintiff told Dr. Friedman that she had also seen Dr. Lockhart for her condition but did not

---

[1]Plaintiff did not submit medical reports from Dr. Awerbuch, Dr. Beird or Dr. Lockhart.

4

know the results of the examination (R. 156).

Dr. Friedman's manual testing of the major muscle groups in the upper extremities showed no evidence of focal or diffuse weakness (R. 157).  Her grip strength was between 28 and 47 pounds, greater on the left than on the right (R. 157).  Plaintiff was able to grip a pen and print and sign her name (R. 157).   Plaintiff had no difficulty retrieving paperclips placed in Dr. Friedman's hand. (R. 157). Tinel's and Phalen signs were negative (R. 157).  Plaintiff's deep tendon reflexes were symmetric in the legs and her straight leg raise was negative (R. 158). Plaintiff had some mild to moderate swelling in the left ankle, and her ankle range of motion was minimally restricted bilaterally (R. 158). She had full range of motion in her hip and knee (R. 158). Plaintiff was able to dress and undress independently and had no difficulty getting on and off of the examining table or up from a chair (R. 158).  Dr. Friedman opined that a walking aid would help Plaintiff to reduce pain (R. 162).

On February 9, 2004, a state agency physician reviewed the medical evidence of record and opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk at least two hours in an eight-hour workday, sit for six hours in an eight-hour workday, perform only occasional postural maneuvers, and never climb ramps or stairs (R. 163-70).  The state agency physician noted that the medical evidence did not fully support Plaintiff's alleged symptoms (R.168).

On April 26, 2005, Mohammed Syed, M.D., examined Plaintiff for complaints of pain in her left knee and right index finger (R. 186).  Plaintiff had swelling in her left knee and a decreased range of motion (R. 186).

On May 19, 2005, Plaintiff was examined by T.S. Stevens, M.D., for complaints of left

5

knee pain (R. 188). Plaintiff stated that her left knee gave out at times and that she had used a cane intermittently (R. 188). Due to a recent fall, she used her cane all of the time (R. 188). There was tenderness to palpation in the left knee, but good stability in the knee joint (R. 188). X-ray of the left foot, ankle and knee mostly showed mild degenerative arthritic changes (R. 189). Dr. Stevens noted Plaintiff's previous MRI reports: MRI of the lumbar spine showed only degeneration of the L3-L4 invertebral disc (R. 190); MRI of the lumbosacral spine was normal (R. 192); and MRI of the left foot showed inflammatory change in the soft tissues of the ankle and degenerative change of the posterior facet of the talus with a subchondral cyst formation and adjacent edema (R. 191).

### B. Mental Health

Plaintiff was in counseling for alcohol and cocaine addiction from March to December 2003 at Grace Counseling (R. 119-31). During that time, she reported only one relapse, an instance when she drank alcohol and used cocaine (R. 123). Plaintiff indicated that she felt shame and guilt about her addiction and was able to communicate her choices which led to the relapse incident (R. 123).

On January 7, 2004, Plaintiff underwent a psychiatric/psychological evaluation with Karen Marshall, L.L.P. (R. 132-35). Because she had been laid off from her job for lack of a sedentary job option, she was put on permanent disability (R. 132). Since that time, Plaintiff reported a four-pound weight gain, night sweats and screaming in the night (R. 132). Plaintiff reported that she last used cocaine six months earlier and that prior to that she used cocaine a couple of times a week (R. 132-33).

Plaintiff denied having problems getting along with family or neighbors (R. 133).

6

She had used Prozac in the past, but she did not like it and had stopped taking it without the
advice of a mental health professional (R. 133).  Upon examination, Plaintiff was able to recall 5
digits forward and 4 digits backwards, recall 2 words out of 3 after 3 minutes of time had
elapsed, name past presidents, name large cities, and perform some simple mathematical
calculations (R. 134).  Plaintiff was diagnosed with adjustment disorder, depressed mood,
alcohol abuse, and cocaine abuse in early full remission (R. 135).  Plaintiff was assigned a GAF
score of 55, which indicates moderate symptoms or a moderate impairment in social, school, or
occupational functioning (R. 135).  *See Diagnostic and Statistical Manual of Mental Disorders
DSM-IV*, 34 (American Psychiatric Association, 4th ed. 2000) (DSM-IV).

On January 23, 2004, Thomas T.L. Tsai, M.D., a state agency physician, reviewed the
medical evidence of record and opined that Plaintiff could still perform unskilled work despite
her mental impairments (R. 138). Dr. Tsai noted that Plaintiff was moderately impaired in her
ability to maintain attention and concentration for an extended period of time, accept instruction,
and respond appropriately to criticism (R. 138).   Dr. Tsai concluded that Plaintiff could perform
simple, unskilled work despite her mental impairments (R. 138).

   **3.    Vocational Evidence**

VE Judy Findora appeared and testified at Plaintiff's administrative hearing (R.
216-24).  VE Findora classified Plaintiff's past work as a machine operator ranging from
sedentary to light to medium, assembly functions as light to medium and parts stocker as
medium, with all of the jobs as unskilled (R. 217).  The VE was asked to consider a person of
Plaintiff's age, education, and work experience, who was able to perform light work but needed
to sit and stand alternatively at will, could only occasionally perform postural maneuvers, was

7

limited to simple, routine, repetitive tasks, and needed to avoid vibrating power tools and
unprotected heights (R. 218). VE Findora responded that such a person could perform her most
recent machine operator job which was sedentary. (*Id.*)[2]  The VE testified that this person could
perform work as a security guard (6,100 jobs), cashier (18,000 jobs), general office clerk (9,000
jobs), stock clerk (3,000 jobs), assembler (5,000 jobs), and machine operator (4,000 jobs) (R.
223-24).  The ALJ asked the VE the same question with the additional criterion of needing the
use of a cane for walking no more than a few steps; the VE responded that the person could still
perform 2,000 security jobs, 14,000 cashier jobs, all of the office clerk jobs, 1,000 stock clerk
jobs, and none of the assemble or machine operator jobs (R. 224).

Plaintiff's attorney asked the VE to assume the same set of factors for the hypothetical
individual with the additional limitation of a hand impairment (R. 219).  The VE testified that the
typical sedentary machine operator position is not hand intensive requiring less than occasional
use of one's hands such as pushing a button.  After further clarification from the Plaintiff as to
the exact job requirements of her prior work, which involved more than occasional use of her
hands, the VE concluded that a person with all of the limitations including the hand impairment
would be precluded from her past relevant work (R. 222).

### 4.    ALJ Sasena's Decision

ALJ Sasena found that Plaintiff met the insured status requirements of the Social Security
Act through December 31, 2006, and had not engaged in substantial gainful activity since she
allegedly became disabled (R. 19).  He found that Plaintiff's degenerative changes of the lumbar

---

[2]The Plaintiff said she could not sit or stand at will in her past job (R. 218).

spine and left foot and adjustment disorder with a history of substance abuse were "severe" impairments within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 19).

Plaintiff had the RFC to perform a restricted range of simple, routine and repetitive light work with a sit/stand option in which she can never climb ladders and occasionally climb stairs, balance, stoop, kneel, crouch and crawl (R. 20). The claimant was to avoid work that involved vibrating tools and needed the opportunity to use a cane for walking more than a few steps (R. 20). In determining Plaintiff's RFC, ALJ Sasena afforded little weight to Plaintiff's allegations that her symptoms result in a RFC precluding her from performing her past relevant work (R. 21). He found that the allegations by the claimant as to the intensity, persistence and limiting effects of his symptoms were not well supported by probative evidence and not wholly credible, because Plaintiff's statements regarding the effects of her impairments on her ability to work were not consistent with the medical and other evidence taken as a whole (R. 21-22).

He found that Plaintiff retained the RFC to return to her past sedentary employment of machine operator (R. 22). In the alternative, he found Plaintiff could perform all of the jobs identified by VE Findora that accommodate a sit-stand option and the need for a cane (R. 23, referred to R. 224). Thus, she was not disabled within the meaning of the Social Security Act (R. 24).

## II.    Analysis

### A.    <u>Standards of Review</u>

Plaintiff must establish that she became disabled under Title II of the Act prior to

December 31, 2006.  *See* 42 U.S.C. § 416(I); 20 C.F.R. §§ 404.131(a), 404.320(b)(2)*; Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment(s) must be of such severity that the individual can neither do her previous work nor engage in any other kind of substantial gainful work which exists in the national economy, considering her age, education, and work experience.  *See id.* § 423(d)(2)(A).

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).   The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  *Id.*  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.  *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461

U.S. 957 (1983).  In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.  A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.  *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

### B.   Factual Analysis

In her motion for summary judgment, Plaintiff argued that ALJ Sasena failed to account for her hand impairment and mental limitations in making his RFC determination (Dkt. # 10).

### I. Hand Impairment

Plaintiff argues that because ALJ Sasena failed to find her carpal tunnel to be a severe impairment and to include in his RFC determination limitations pertaining to carpal tunnel syndrome – because he did not, and because he presented the RFC without any carpal tunnel limitations to VE Findora, VE Findora's opinion that Plaintiff could perform a restricted range of simple, routine and repetitive light work with a sit/stand option could not be relied on as substantial evidence.

The term "severe" is defined in the Regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities". 20 C.F.R. § 404.1520. ALJ Sasena did not find Plaintiff's carpal tunnel syndrome to be a severe impairment (R. 19).

This is not the usual case where the ALJ enumerated all of the claimant's impairments and stated that she had a combination of impairments which were collectively severe. Rather, ALJ Sasena took the time to separate out those impairments which he found to be severe "as defined in the Social Security Act" and not severe (R. 19-20), thus leading one to conclude that those impairments designated as severe significantly limited Plaintiff's physical ability to do basic work activities.

A hypothetical question may omit non-severe impairments, *Benenate v. Schweiker,* 719 F.2d 291, 292 (8th Cir. 1983), but not impairments found by the ALJ to be severe, *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). In the present case the RFC presented to VE Findora by the ALJ did not include any limitations for Plaintiff's carpal tunnel syndrome.

Defendant's arguments on this topic all speak to the fact that there was no objective

medical evidence to support Plaintiff's allegation of severe carpal tunnel syndrome or disabling limitations based on her carpal tunnel syndrome. This argument has appeal given the facts that Plaintiff rarely if ever complained of carpal tunnel related symptoms to her doctors, the medical record does not indicate any carpal tunnel-related restrictions and the medical evidence that might have shown proof of her condition was never submitted by Plaintiff.

The ALJ specified that the record did not establish the existence of any medical impairment that would affect the Plaintiff's ability to use her upper extremities, specifically on the issue of carpal tunnel, there was no evidence of the condition upon examination (R. 21). The examination showed that Plaintiff was able to grip between 28 and 47 pounds with either hand, whereas light work requires only the ability to lift 20 pounds on an occasional basis (R. 157). Additionally, examination of Plaintiff's major muscle groups in the upper extremities showed no evidence of focal or diffuse weakness (R. 157). Plaintiff could hold a pen in her dominant left hand, write her name, and pick up paperclips from the doctor's hand (R. 157). Both the Tinel's and Phalen signs were negative (R. 157).

Plaintiff failed to provide any medical opinions to the contrary. It is Plaintiff's burden to provide medical evidence showing an impairment, its severity during the relevant time, and its effects on daily function. *See* 20 C.F.R. § 404.1512(c). During the administrative law hearing, Plaintiff's attorney cited to "other records" that he wanted to be considered. According to the transcript, the previous files were not marked but a paper clipped section from Dr. Awerbuch from 2001 showing an EMG as well as a clinical examination were to be admitted (R. 202). The ALJ asked the attorney if by chance there were any other documents to which the attorney replied in the negative (R. 202). The ALJ then admitted all the exhibits into evidence, as is

13

reflected by the official record, exhibits A-F.  Curiously, there is no report from Dr. Awerbuch or an EMG report in the record.  From Plaintiff's motion for summary judgment, it is not clear why the documents are missing.  Plaintiff states in her brief, "[I]n fact, in that associated file, there was an EMG from July 5, 2001, that did show evidence of right carpal tunnel syndrome but, unfortunately, that file was not provided nor contained in the certified transcript filed with this Honorable Court so the undersigned cannot cite to a specific exhibit number."  (Dkt. #10, p. 10).

Nor is it clear why Plaintiff failed to produce this EMG with her request for Appeals Council review or with her appeal to this Court.  In her motion for summary judgment, she offered no reason for failing to do so.  Even if Plaintiff had produced Dr. Awerbuch's report and attendant EMG, they could not be considered for purposes of determining whether the ALJ's decision is supported by substantial evidence, rather they could only be considered for the limited purpose of determining whether Plaintiff was entitled to a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).  *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).The party seeking a remand must prove that the additional evidence is new and material, and that he or she had good cause for his or her failure to incorporate the additional evidence into the record during the administrative hearing. See 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163, 2165 (1991). Here, Plaintiff has not articulated good cause for the  failing to submit this evidence to the ALJ, and has not shown that a 2001 EMG is material to her claim.

In addition to the lack of objective medical evidence to support the ALJ's finding that Plaintiff's alleged carpal tunnel syndrome was not severe, the ALJ found Plaintiff's testimony regarding her limitations to be not wholly credible in light of the objective medical evidence. Subjective evidence is only considered to "the extent [it] can reasonably be accepted as

14

consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)) (*See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Secretary,* 801 F.2d 847, 852 (6th Cir. 1986) (Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain). The issue of a claimant's credibility regarding subjective complaints is largely within the scope of the ALJ's fact finding discretion – the Commissioner's "zone of choice" – if adequately explained and supported by the record.

The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ must, however, do more than say the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.

Plaintiff considers herself to be a person with carpal tunnel syndrome, the record, however, does not show a diagnosis of the condition, nor does it support a finding that such a condition disables Plaintiff from returning to work. Plaintiff alleged at various times that she occasionally dropped pots and occasionally felt tingling in her right wrist and thumb, the

15

contemporaneous medical evidence, however, did not support her allegations that she was unable to perform light work with these symptoms.

The RFC determination took into account the assessment made by the state agency physician, though it did not fully adopted the physician's opinion that Plaintiff could only walk two hours per day.  The ALJ, instead, found Plaintiff able to perform a restricted range of light work with a  sit/stand option and allowed her to use a cane if she were to walk more than a few steps, factors that accommodate Plaintiff's subjective account of her impairments.

The record as a whole supports the ALJ's assessment of the nature and severity of the limitations caused by Plaintiff's impairments.  None of the physicians who examined and diagnosed Plaintiff indicated a belief that would preclude ability to return to work, they all felt that she could.   Under 42 U.S.C. 405(g), Congress has limited federal court's authority in disability reviews, and if substantial evidence supports the ALJ's decision, as it does in this case with many medical sources supporting the ALJ's finding, it must be affirmed – even if substantial evidence also supports the opposite conclusion, and even if this Court would have reached a different conclusion.  *See Buxton v. Halter*, 246 F.3d 762, 772-773 (6th Cir.2001)(substantial evidence standard encompasses a "zone of choice" within which the Commissioner can act without court interference (internal citations omitted)).  Given the unequivocal medical evidence and the evidence that Plaintiff could manage her personal care needs with limited assistance, was oriented to person, place, and time, and in all other respects is able to function on a daily basis, substantial evidence supports the ALJ's decision to discount Plaintiff's credibility.

The final hypothetical questions the ALJ asked the VE which included a sit-stand option

16

and use of a case (R. 224), and the corresponding answers the ALJ relied on, were adequate and proper because the hypothetical relied on included all of Plaintiff's substantiated impairments and resultant limitations. The ALJ may pose hypothetical questions to the VE which include only those limitations which the ALJ finds credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In conclusion, the ALJ's decision to find that the Plaintiff's alleged hand impairment was not "severe" was supported by substantial evidence and should not be overturned.

### II.  Mental Impairment

Plaintiff argues that the ALJ erred in determining her mental RFC, in which he should have accounted for greater work-related mental limitations based on Dr. Tsai's opinion that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods of time and moderate limitations in her ability to accept instructions and respond appropriately to criticism.  ALJ Sasena found that Plaintiff's concentration, persistence and pace were mildly impaired (R. 22).  He also found that she could perform simple, routine, repetitive work.  While finding her concentration limitations less severe than Dr. Tsai, the ALJ's conclusion was the same as Dr. Tsai's that Plaintiff could perform simple, unskilled work despite her mental impairments.  This was also the conclusion of the psychologist Marshall (R. 135).

Even though the conclusions are the same, Plaintiff argues, relying on *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001), that any finding of moderate limitations in concentration, persistence or pace, entitles a claimant to a restriction against jobs with quotas.  In *Smith*, the ALJ cited to the reports on Smith's concentration problems, as well as the physicians'

17

conclusions regarding her abilities.  Like *Smith*, ALJ Sasena relied on all of the information regarding Plaintiff's mental impairment, to wit; Plaintiff did not require ongoing mental health treatment, did not take psychotropic medication, and  performed adequately on a mental status evaluation by psychologist Marshall; there was no claim that she was functionally limited due to her mental impairment; and Dr. Tsai's opinion that Plaintiff could perform simple, unskilled work.

While Plaintiff counsel's argument on quotas is generally correct for limitations in concentration, persistence and pace are moderate, ALJ Sasena rejected Dr. Tsai's opinion on this and rather found Plaintiff's concentration limitations only mild (R. 22).  While an ALJ cannot substitute his lay opinion for a license professional without support in the record, here there is such support.  There are no concentration problems noted in either the medical or mental records.  In the thirteen progress notes from Grace Counseling Serves, there is not a hint of any concentration problems (R. 119-131).  Nor is it mentioned in her psychological evaluation (R. 132-35).  Her flawless completion of both serial 3's and serial 7's demonstrates excellent concentration (R. 134).   Thus the record supports ALJ Sasena's finding of only mild impairments of concentration, persistence and pace.

Additionally, Plaintiff's attorney was afforded an opportunity to question the VE, an opportunity he took advantage of to question the VE on the issue of her alleged hand impairment but did not question the VE on Plaintiff's mental condition.  Upon belief of  a limitation on quota work, it is incumbent upon counsel to pose a question to the VE reflecting the limitation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006).  Plaintiff's counsel was silent on the issue of a mental impairment during the hearing.  In conclusion, the ALJ formulated

an RFC which adequately took into account Plaintiff's limitations as they related to her depression, as such it is recommended that the ALJ's RFC finding should not be reversed because it was supported by substantial evidence.

### .IV.    Recommendation

For the reasons stated above, it is Recommended that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Steven D. Pepe
United States Magistrate Judge


Dated:  February 25, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 25, 2009.


S/V. Sims
Case Manager